### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THOMAS GRANTHAM, JR.,**

     **Petitioner,**

**v.**                                                    **Civil Action No. 1:17cv95**
                                                         **(Judge Keeley)**

**DAVID BALLARD, Warden,**

     **Respondent.**

### <u>REPORT AND RECOMMENDATION</u>

This case was initiated by the *pro se* Petitioner on May 25, 2017, by the filing of a

petition for habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1. Along with his petition,

Grantham filed a motion to proceed *in forma pauperis* ("IFP"), a copy of his Prisoner Trust Fund

Account Report, and the five dollar filing fee.  ECF Nos. 2, 3, & 4.  By Order entered May 30,

2017, the IFP motion was granted in error.  ECF No. 6.  On June 7, 2017, the Order granting the

IFP motion was vacated. ECF No. 7.

By separate Order entered June 7, 2017, pursuant to Rule 4 of the Federal Rules

Governing Section 2254 Proceedings in the United States District Court, the undersigned made a

preliminary review of the petition and found that summary dismissal was not warranted at that

time.  Accordingly, the Respondent was directed to file an answer to the petition. ECF No. 10.

On June 13, 2017, the Respondent moved for an extension of time.  ECF No. 15. On June 20,

2017, Petitioner moved for appointed counsel.  ECF No. 16.  By Order entered June 21, 2017,

Petitioner's motion for appointed counsel was denied.  ECF No. 17.  By Order entered June 26,

2017, Respondent's motion for an extension was granted.  ECF No. 18. On August 4, 2017, the

Respondent filed a response, a Motion for Judgment on the Pleadings, and a memorandum in

support.  ECF Nos. 21, 22, & 23.  Because Petitioner was proceeding *pro se*, on August 9, 2017, a <u>Roseboro</u> Notice was entered.  ECF No. 24.  On August 17, 2017, Petitioner filed a response in opposition to Respondent's dispositive motion, which contained within it a motion for an order directing the state court to provide a hearing and fully adjudicate Petitioner's ineffective assistance of counsel claims. ECF No. 26.

Accordingly, this case is before the undersigned for a report and recommendation pursuant to LR PL P 2.

## I.   Factual and Procedural Background

### A.   Petitioner's Conviction and Sentence[1]

The state asserted that on the night of April 22 and into the early morning of April 23, 2011, petitioner and Co-Defendant James Cross were at a bar in Martinsburg . They were seen at the bar by fellow patrons Sharenna Gonzalez, Sheron . . . [and] Shameeka Yates, and by bar employee Daniel Derito. Derito also identified petitioner and Cross on video surveillance taken at the bar that night.

Derito testified that after the bar closed he broke up a verbal dispute between petitioner and Cross and two other males. Gonzalez and Sheron Yates testified that while outside the bar, they witnessed a verbal dispute between Cross and another man, Jacques Taylor. There was testimony that Cross flicked a cigarette into the face of Taylor's friend, Andre Jackson. Gonzalez, who was not drinking that night, testified that she and Cross got into Cross' car where Gonzalez tried to calm Cross down. Gonzalez testified that she got out of the car when petitioner got in.

The State's witnesses testified that petitioner and Cross then left together, with petitioner driving. Taylor and Jackson followed in a car driven by Taylor. Gonzalez and the Yateses followed in a third vehicle that was driven by Gonzalez. There was testimony that petitioner pulled into a gas station, followed by the other vehicles. Angry words were exchanged between the occupants of the petitioner/Cross vehicle and the Taylor/Jackson vehicle. The Taylor/Jackson vehicle pulled out of the gas station followed by the petitioner/Cross vehicle and the Gonzalez/Yates vehicle. The Taylor/Jackson vehicle turned into an apartment complex and headed up a hill toward the back of the complex. The petitioner/Cross vehicle and the Gonzalez/Yates vehicle stopped in a parking area to turn around. The petitioner/Cross vehicle pulled out of the parking area.

---

[1] The summary of the facts of the crimes was taken from the WVSCA's memorandum decision on direct appeal. <u>See</u> ECF No. 21-16 at 1 – 4.

Gonzalez testified that she tried to follow but her vehicle was almost struck by the Taylor/Jackson vehicle being driven in reverse down the road out of the complex.

The three cars came to a stop. Gonzalez and the Yateses testified that petitioner and Cross exited their vehicle and ran to the Taylor/Jackson vehicle, with petitioner going to the driver's side (Taylor) and Cross going to the passenger's side (Jackson). Taylor testified at trial that he rolled down his window to speak but was immediately stabbed in the neck, chest, arms, and shoulder. At trial, Gonzalez and the Yateses identified petitioner as the perpetrator who stabbed Taylor. Meanwhile, Cross was repeatedly stabbing Jackson. The women exited their vehicle and observed the altercation. The women testified that petitioner and Cross then ran back to their car, with petitioner knocking Shameeka Yates down as he ran past her. They testified that as petitioner was driving away, he attempted to run down Jackson.

The 911 center was called at approximately 3:18 a.m. on April 23. Taylor survived, but Jackson collapsed and died from his injuries.

The next day, April 24 . . . was Easter Sunday[]; petitioner called his cousin to explain that he was *en route* to her home in Cincinnati  and needed her address. The cousin testified that she had previously invited petitioner to attend her daughter's birthday party on April 27, but he had not told her he was coming. Petitioner, accompanied by Cross, arrived at the cousin's home and stayed in the bedroom of the cousin's sons. Police later searched this bedroom and found tote bags with four knives and two false identification cards, including a West Virginia identification card that had petitioner's photograph but a false name. Police also searched a home in Martinsburg where petitioner frequently resided, finding two box cutters hidden in a cigar box with petitioner's real identification card, and a butcher knife in a bedroom.

When questioned by police after the crime, Sheron Yates did not refer to petitioner by name but only as the "black male." However, Sheron later identified petitioner in a police photo array. Shameeka Yates was unable to identify petitioner in the photo array, but identified him at trial. Taylor gave conflicting information to police and initially said that he was not sure if his assailant was male or female. At trial, Taylor was unable to identify his assailant other than to say that it was an African-American male whom he had seen at the bar that night. At trial, Gonzalez identified petitioner as an assailant.

Petitioner did not testify at trial but asserted an alibi defense. His lawyer argued that some other man, not petitioner, was in the car with Cross at the time of the physical altercation. The defense presented testimony from petitioner's neighbor William Golden that around 3:00 a.m. on April 23, Golden saw petitioner standing on their street. Golden testified that he heard a car pull up and when he went back outside, petitioner was gone and a Mercedes was leaving. The defense also presented testimony from petitioner's friend Darnell Carey that he saw

petitioner get dropped off by a Mercedes at 3:10 a.m. and then get into a black Cadillac.

ECF No. 21-6 at 1 – 4.

Petitioner and Cross were jointly indicted and tried[2] in the Berkeley County Circuit Court in Case No. 11-F-208. On June 18, 2012, after a 5-day jury trial, Petitioner was convicted of second degree murder, attempted murder, and malicious assault, but acquitted of a conspiracy charge. ECF No. 21-1; see also ECF No. 21-6 at 4.

At an August 27, 2012 sentencing hearing, the circuit court denied Petitioner's post-trial motions for directed verdict and for judgment of acquittal notwithstanding the jury's verdict. ECF No. 1 at 2. The court then sentenced Grantham to a determinate term of 40 years imprisonment on the second degree murder charge; not less than one nor more than three years on the attempted murder charge; and not less than two nor more than ten years on the malicious wounding charge, with all sentences to run consecutively for a total term of 43 – 53 years in prison. Id. at 3 – 4.

**B.  Direct Appeal**

On appeal,[3] in WVSCA Case No. 12-1293, Petitioner raised these nine assignments of error, alleging that the trial court committed plain and prejudicial error and abused its discretion when it:

1) denied Petitioner's motion to sever his trial from that of co-defendant Cross [ECF No. at 7] [in violation of federal law; see ECF No. 21-3 at 34];

2) allowed in-court identification of persons unable to identify Petitioner in an out-of-court photo array on the same day of the alleged crime [id. at 7, 31 – 32];

3) allowed the state to present evidence of flight against the Petitioner [id. at 7, 38 – 40];

---

[2] Although Petitioner was represented by Sherman Lambert at his preliminary hearing and arraignment, trial counsel was Attorney B. Craig Manford. See ECF No. 1 at 23 – 24.

[3] Attorney B. Craig Manford was also appellate counsel. See ECF No. 1 at 24.

4) allowed the state to present autopsy photographs of the victim Andre Jackson [id. at 7, 38 – 40];

5) allowed the state to present evidence of various knives found in Petitioner's possession which were in no way linked to the alleged crime [id. at 7, 38 – 39, 41];

6) failed to direct a verdict in Petitioner's favor at the close of the state's case-in-chief and at the close of evidence, or, in the alternative,  the jury's verdict was contrary to the the evidence presented [id. at 7, 41 – 42];

7) allowed the state's jury instruction on "concerted action" as there was no showing of any shared intent between Petitioner and co-defendant Cross [id. at 7, 42 – 43];

8) failed to allow Petitioner to comment on co-defendant Cross' silence in closing argument [id. at 7, 43, 34 – 38]; and when it

9) sentenced Petitioner to 40 years upon his second degree murder conviction and ran his other sentences for attempted murder and malicious assault consecutively to each other. Id. at 7, 43 – 45.

By memorandum decision entered on November 22, 2013, the West Virginia Supreme Court of Appeals ("WVSCA") affirmed Petitioner the circuit court's judgement on Petitioner's convictions and sentences. ECF No. 21-6. Mandate issued on the WVSCA's decision on December 23, 2013.  ECF No. 21-7. Grantham did not seek further review. ECF No. 1 at 3.

## C.  Petitioner's State Habeas Petition

On June 16, 2014, Grantham filed a *pro se* petition for writ of habeas corpus in the Berkeley County Circuit Court in Case No. 14-C-405, raising eight grounds for relief. ECF No. 21-8. Thereafter, the circuit court appointed him counsel.[4]

By Order entered June 19, 2014, counsel was directed to file an amended petition and a Losh[5] list.  ECF No. 21-9. On November 5, 2014, through counsel, Grantham filed an amended habeas petition [ECF No. 21-10] raising five claims:

---

[4] Court-appointed habeas counsel was attorney S. Andrew Arnold.  See ECF No. 21-2 at 4; see also 21-10 at 26.

[5] Losh v. McKenzie, 277 S.E.2d 606, 166 W. Va. 762 (W.Va. 1981).

1) he was denied his constitutional right to effective assistance of counsel, in violation of his Sixth Amendment of the United States Constitution and under Article III, § 14 of the West Virginia Constitution [ECF No. 21-10 at 7], when

a) trial counsel made the ill-advised decision to proceed with an alibi defense in light of overwhelming evidence to the contrary [id. at 9];

b) trial counsel failed to adequately and thoroughly investigate Petitioner's case by utilizing the preliminary hearing transcripts and the state's witnesses original statements to the police for impeachment purposes [id.];

c) trial counsel failed to properly object to the state's introduction of inadmissible hearsay statements and testimony of Sheron Yates, Shameeka Yates, and Jacques [id.];

d) trial counsel failed to properly cross-examine the witnesses to establish that the stabbing of Andre Jackson and Jacques Taylor took place outside of the vehicle while Petitioner was retreating [id.];

e) trial counsel failed to move the court for a defense expert witness on blood spatter and knife wounds to disprove the state's investigating officer and lay witness testimony that the stabbing of Jackson and Taylor took place in the front seat of Taylor's vehicle [id. at 9 - 10]; and

f) on direct appeal, appellate counsel failed to raise the issue of Juror # 7450, Victor Holmes, and his relationship to Petitioner. Id. at 10.

2) Petitioner's constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution and under Article III, § 14 of the West Virginia Constitution to an impartial jury were violated by the participation of Juror #7450, Victor Holmes, because he was a blood relative of Petitioner. Id. at 14.

3) The trial court committed constitutional error by violating Petitioner's due process rights under the Fourteenth Amendment to the United States Constitution and Article III, § 10 of the West Virginia Constitution, when the trial court denied his motion to sever his trial from that of his co-defendant Cross. Id. at 17.

4) The circuit court committed a constitutional error by denying Petitioner's due process rights to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and Article III, §10 of the West Virginia Constitution, when it gave an erroneous and improper "concerted action" instruction. Id. at 20.

5) Petitioner's due process rights to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and Article III, §10 of the West Virginia Constitution were violated by the cumulative error committed at trial. Id. at 22. Those errors were:

a) giving the state's proposed instructions on "concerted action" and denying Petitioner's [id. at 23];

b) permitting the state to introduce evidence of flight against Petitioner, and evidence of various knives in his possession, not linked to the crime [id.];

c) permitting the state to introduce gruesome photographs of decedent Andre Jackson [id.];

d) failing to grant Petitioner's motion to sever his trial from his co-defendant's, for the reasons stated in Ground 3 [id.];

e) failing to suppress in-court identification of Shameeka Yates and Jacques Taylor, who could not identify Petitioner in a previous out of court photo array the day after the alleged crime [id. at 24];

f) abusing its discretion by prohibiting Petitioner from calling the co-defendant to testify and then commenting on his co-defendant's silence if he invoked his Fifth Amendment right against self-incrimination [id.];

g) committing error when it permitted the State to comment during closing that Petitioner acted in concert with his co-defendant to commit murder [id.];

h) abusing its discretion by denying Petitioner's motions for a directed verdict, because the evidence was insufficient to convict [id.];

i) failing to grant Petitioner's post-trial motion for a new trial based upon insufficient evidence [id.];

j) committing error when it prohibited Petitioner from obtaining the investigating officers' original notes taken during the investigation wherein the prosecutor could have withheld exculpatory evidence [id.];

k) permitting the state to improperly secure Petitioner's conviction by tainted jury instructions that diluted the reasonable doubt standard [id. at 25];

l) allowing the jury's verdict to stand in light of the improper and tainted jury instruction [id.]; and

m) abused its discretion when it sentenced the Petitioner to forty years upon his conviction for second degree murder, and then ordered his convictions for attempted murder and malicious assault to run consecutively to each other." Id.

7

On April 16, 2015, counsel filed Petitioner's <u>Losh</u> list of claims waived; the remaining unwaived claims,[6] renumbered here for clarity and consistency, are:

6) the statute[s] under which convictions were obtained were unconstitutional;

7) prejudicial pre-trial publicity;

8) consecutive sentences for same transaction;

9) suppression of helpful evidence by prosecutor;

10) state's knowing use of perjured testimony;

11) ineffective assistance of counsel;

12) prejudicial joinder of defendants;

13) refusal to turn over witness notes after witness has testified;

14) constitutional errors in evidentiary rulings;

15) instructions to the jury;

16) claims of prejudicial statements by prosecutor;

17) sufficiency of evidence;

18) severer sentence than expected; and

19) excessive sentence;

<u>See</u> ECF No. 21-11 at 2 – 4.

By Order entered June 25, 2105, the circuit court summarily dismissed Grounds 1, 3, 4, & 5 pursuant to Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia and ordered the state to respond to Petitioner's only remaining claim,[7] his

---

[6] No argument in support of these claims was made.

[7] No mention of the disposition of the unwaived <u>Losh</u> list claims is made in this order.

Ground 2 claim that his right to an impartial jury was violated by the inclusion of Juror # 7450. ECF No. 21-13.

After the state's response, on January 19, 2016, the circuit court conducted an omnibus evidentiary hearing on the remaining Ground 2 claim.  ECF No. 21-15. After reviewing the evidence and hearing the arguments of counsel, by an Amended Memorandum Opinion and Order entered April 13, 2016, the circuit court denied relief. ECF No. 21-18 at 13.

Petitioner timely appealed to the WVSCA in WVSCA Case No. 16-0452, raising three grounds of error:

1) the circuit court committed plain and prejudicial error when it conducted an independent fact finding in violation of Rule 2.9 of the West Virginia Code of Judicial Conduct and Petitioner's constitutional due process right [ECF No. 21-19 at 3, 20 - 24];

2) the circuit court committed reversible error when it summarily dismissed Petitioner's ineffective assistance of counsel claims without requiring the state to respond and without holding an omnibus hearing, denying Petitioner's constitutional right to effective assistance of counsel under the Sixth Amendment [id. at 3, 25, & 28], regarding:

a) trial counsel's ill-advised decision to proceed with an alibi defense in light of overwhelming evidence to the contrary [id. at 29];

b) trial counsel's failure to adequately and thoroughly investigate Petitioner's case by utilizing the preliminary hearing transcripts and the state's witnesses original statements to the police for impeachment purposes [id.];

c) trial counsel failed to properly object to the state's introduction of inadmissible hearsay statements and testimony of Sheron Yates, Shameeka Yates, and Jacques Taylor [id.];

d) failure to cross examine witnesses to establish that the stabbing of Andre Jackson and Jacques Taylor took place outside of the vehicle while Petitioner was retreating [id.];

e) trial counsel failed to move the court for a defense expert witness on blood spatter and knife wounds to disprove the state's investigating officer and lay witness testimony that the stabbing of Jackson and Taylor took place in the front seat of Taylor's vehicle [id. at 29 - 30]; and when

f) appellate counsel failed to raise the issue of Juror # 7450, Victor Holmes, and his relationship to Petitioner on direct appeal. Id. at 10.

3) The circuit court committed prejudicial and reversible error when it denied Petitioner's habeas corpus claim regarding the violation of his Fourteenth Amendment due process right to a fair and impartial jury by the inclusion of Juror No. 7450, Victor Holmes, on the jury panel during his criminal proceeding. Id. at 3.

By Memorandum Decision entered on March 10, 2017, the WVSCA affirmed the circuit court's denial of relief. ECF No. 21-22; see also Grantham v. Ballard, No. 16-0452, 2017 W. Va. LEXIS 153, 2017 WL 944057 (W.Va. Mar. 10, 2017). On April 11, 2017 the WVSCA entered its mandate, finalizing its decision. ECF No. 21-23 at 2.  Grantham did not seek further review.

## D.  **Petitioner's Federal Habeas Petition**

On May 25, 2017, Petitioner filed his *pro se* § 2254 petition without a memorandum in support, attaching copies of the WVSCA's memorandum decision on his habeas appeal; the WVSCA's April 11, 2017 mandate on his habeas appeal; the Berkeley County Circuit Court's June 25, 2015 Order summarily dismissing certain grounds and ordering respondent to answer; and the Berkeley County Circuit Court's April 13, 2016 Amended Memorandum Opinion and Order, denying his remaining habeas claims.  See ECF 1-1, 1-2, 1-3, & 1-4. He also attached a list of claims raised in his state habeas petition and in the appeal of that petition. See ECF No. 1 at 20 -21.  His § 2254 petition raises these five claims with their subparts:

1) Petitioner was denied his constitutional right to effective assistance of counsel when:

a) trial counsel made the ill-advised decision to proceed with an alibi defense [ECF No. 1 at 6];

b) trial counsel failed to adequately and thoroughly investigate by failing to utilize transcripts and witness statements to police [id.];

c) trial counsel failed to properly object to inadmissible hearsay statements from witnesses [id.];

d) trial counsel failed to properly  cross examine witnesses to establish that the stabbing took place outside of the vehicle [id.];

e) trial counsel failed to move the court for an expert witness on blood spatter, to prove that the stabbing did not take place inside the vehicle [id.]; and

f) appellate counsel failed to raise the issue of Juror #7450, Victor Holmes and his relationship to Petitioner on direct appeal. Id.

2) Petitioner's constitutional rights to an impartial jury were violated by the participation of Juror # 7450, Victor Holmes, because he was a blood relative [id. at 8];

3) the trial court committed constitutional error when it denied Petitioner's motion to sever his trial [id. at 11];

4) the trial court committed constitutional error when it gave an erroneous and improper "concerted action" instruction to the jury [id. at 13]; and

5) Petitioner's constitutional right to a fair and impartial jury and due process were violated by the cumulative errors committed at trial.  Id. at 16.  Petitioner contends those errors are the court's:

a) giving the state's proposed instructions on "concerted action" and denying his [id.];

b) permitting the state to introduce evidence of flight [id.];

c) permitting the state to introduce gruesome photographs [id.];

d) failing to grant Petitioner's motion to sever [id.];

e) failing to suppress in-court identification of Shameeka Yates and Jacques Taylor, who could not identify Petitioner in a previous out of court photo array the day after the alleged crime [id.];

f) abusing its discretion by prohibiting Petitioner from calling the co-defendant to testify and then commenting on his co-defendant's silence if he invoked his Fifth Amendment right against self-incrimination [id.];

g) committing error when it permitted the State to comment during closing that Petitioner acted in concert with his co-defendant to commit murder [id.];

h) abusing its discretion by denying Petitioner's motions for a directed verdict, because the evidence was insufficient to convict [id. at 16 – 17];

i) failing to grant Petitioner's post-trial motion for a new trial based upon insufficient evidence [id. at 17];

j) committing error when it prohibited Petitioner from obtaining the investigating

11

officers' original notes taken during the investigation wherein the prosecutor could have withheld exculpatory evidence [id.];

k) permitting the state to improperly secure Petitioner's conviction by tainted jury instructions that diluted the reasonable doubt standard [id.];

l) allowing the jury's verdict to stand in light of the improper and tainted jury instruction [id.]; and

m) abused its discretion when it sentenced the Petitioner to forty years upon his conviction for second degree murder, and then ordered his convictions for attempted murder and malicious assault to run consecutively to each other." Id.

Grantham asserts that his petition is not time barred. Id. at 25.

He contends that he has exhausted his state court remedies on Ground 1 [id. at 8]; Ground 2 [id. at 10]; Ground 3 [id. at 12 – 13], Ground 4 [id. at 15]; and Ground 5 [id. at 18].

As relief, he asks the Court to reverse the judgments of the Berkeley County Circuit Court and the WVSCA, and remand his case back to the circuit court to grant him a new trial. Id. at 26.

## E.  **Respondent's Answer and Motion for Judgment on the Pleadings for Failure to Exhaust**

Respondent concedes that the petition is timely filed. ECF No. 21 at 1.

Nonetheless, Respondent contends that:

1) the petition must be dismissed for failure to exhaust state court remedies because it is a mixed petition,[8] containing at least one ground for relief that has not been previously adjudicated on direct appeal or in state post-conviction proceedings, requiring the entire petition to be dismissed.  Id.

2) Specifically, Petitioner's § 2254 Ground 5 claim of cumulative error, while raised in his state habeas petition in the circuit court, was not raised on the appeal of that action to the WVSCA. Id. at 6; see also ECF No. 23 at 6.

3) Further, Petitioner's Ground 1 claim, while raised in the circuit court as claims of constitutional violations of the Sixth Amendment of the United States Constitution and Article III, § 14 of the West Virginia Constitution, arising out of trial and appellate counsels' ineffectiveness, was raised on appeal as a different claim, that the *circuit court erred* in not

---

[8] A "mixed petition" is one that contains both exhausted and unexhausted claims.

holding an evidentiary hearing to permit his ineffective assistance claims to be developed. Accordingly, the WVSCA resolved the claims on independent state law, i.e., that Petitioner failed to present sufficient factual support for his claim, which, under Rule 4 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, W.Va. Code § 53-4A-3, obviated the need to determine whether Petitioner's Sixth Amendment right to counsel was infringed upon. ECF No. 21 at 7. Therefore, because Petitioner did not "fairly present" a Sixth Amendment claim of ineffective assistance of counsel on appeal in the WVSCA, he failed to exhaust the claim. ECF No. 23 at 6 – 7; ECF No. 21 at 6 – 7.

3) Finally, Responded reserved the right to address Petitioner's allegations in more specificity, should the Court so direct. ECF No. 21 at 8.

## F. Petitioner's Response

In his response in opposition, Grantham now concedes that he has filed a mixed petition and that his cumulative error claim is not exhausted because although raised in his state habeas, it was not raised on appeal to the WVSCA of the same. ECF No. 26 at 2.  However, he argues that his claims of counsels' ineffectiveness should be considered exhausted, because he raised them in his state habeas and on the appeal of the same, but the circuit court summarily dismissed them and the WVSCA failed to "fully adjudicate, or even mention" them in its memorandum decision, and further, failed to remand the case back to circuit court so that they could be adjudicated.  Id. at 2 – 3.  Therefore, he argues, the blame for the failure to exhaust his claims of ineffective assistance of counsel is the state courts'.  Id. at 3 – 4. He asks the court to dismiss his petition without prejudice for failure to exhaust, and to "exercise its supervisory powers" by directing the circuit court to grant a hearing on the merits and provide him a full and final adjudication on his unexhausted claims.  Id. at 4.

## II. Standard of Review

## A.  Motion for Judgment on the Pleadings

A motion to dismiss a § 2254 petition is treated as Rule 12(c) motion for judgment on the pleadings. Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); Fed. R. Civ. P 12(c). A court

considering a motion for judgment on the pleadings under Rule 12(c) applies the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6). Burbach Broad Co. V. Elkins Radio Corp., 278 F.3d 401, 405 - 06 (4th Cir. 2002). A court must accept all facts pleaded by the § 2254 petitioner as true and draw all reasonable factual inferences from those facts in the petitioner's favor. Walker, 589 F.3d at 139 (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

If evidence outside the pleadings is tendered to and accepted by the Court, the motion for judgment on the pleadings is converted into a motion for summary judgment under Rule 56, with one important exception. Burbach, 278 F.3d at 406 (citing A.S. Abell Co. V. Baltimore Typographical Union, 338 F.2d 190, 193 (4th Cir. 1964)); Fed. R. Civ. P. 12(d). The motion is not converted into a summary judgment motion if the Court considers documents and facts of which it may take judicial notice. Id. (citing R.G. Fin. Corp. V. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006)). The Court may take judicial of certain facts which are not subject to reasonable dispute, Fed. R. Evid. 201, and of the existence and contents of various types of official documents and records. Id. (citing Lovelace v. Software Spectrum, 78 F.3d 1015, 1018 (5th Cir. 1996) (documents filed with government agencies); Anderson v. FDIC, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990)(records of bankruptcy court); Bratcher v. Pharm. Prod. De., Inc., (545 F.Supp.2d 533 n. 3 (W.D.N.C. 2008) (EEOC complaints and right-to-sue notices)).

Although *pro se* petitions are to be liberally construed as set forth in Haines v. Kerner, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted). A habeas petitioner must come forth with

evidence that a claim has merit. <u>Nickerson v. Lee</u>, 971 F. 2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. <u>Id.</u> The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court.  <u>Weller v. Dept. of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

### III. <u>Analysis</u>

#### <u>Exhaustion of State Remedies</u>

Section 2254 of Title 28 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State. . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1)(A), (c). Therefore, a petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies.  <u>See</u> 28 U.S.C. §2254(b).  Absent a valid excuse, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  <u>Castille v.</u> <u>Peoples</u>, 489 U.S. 346, 349, *reh'g denied,* 490 U.S. 1076 (1989).  To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court.  <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997).  "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim.  The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." <u>Id.</u> at 911.  "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a

state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Howell v. Mississippi, 543 U.S. 440, 444 (2005).

The petitioner bears the burden of proving exhaustion. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Id. Where a petitioner has failed to exhaust his state court remedies, the federal petition should be dismissed. McDaniel v. Holland, 631 F. Supp. 1544, 1545 (S.D. W.Va. 1986) (citing Preiser v. Rodriguez, 411 U.S. 475, 477 (1973).

"The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard, 134 F.3d at 619. A federal court may only consider those issues the petitioner presented to the state court. Picard v. Connor, 404 U.S. 270 (1971). The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims – in federal terms – to the highest state court prior to presenting them for federal habeas review. Id. at 275. This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Id. To exhaust a claim in state court, the petitioner must "expressly raise that same federal constitutional claim in state court that he raises in federal court." Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C. Aug. 1, 2006). "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling in the WVSCA.  Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W.Va. 1995); McDaniel, 631 F. Supp. at 1545.  A federal court may only consider those issues the petitioner presented to state court,[9] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. §2254(c).

    A prisoner may also exhaust the State court remedies by filing a petition for a writ of habeas corpus under the original jurisdiction of the WVSCA.  However, an original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the prisoner's State court remedies.  See Moore, 879 F. Supp. at 593; McDaniel, 631 F. Supp. at 1546; see also Meadows v. Legursky, 904 F.2d 903, 908-909 (4th Cir. 1990) (abrogated on other grounds); Trest v. Cain, 522 U.S. 87 (1997)).

    Here, Petitioner has filed a direct appeal and a state petition for writ of habeas corpus, and has appealed the denial of the same. Respondent contends Petitioner has filed a mixed petition by failing to exhaust Grounds One and Five.  In response, Grantham partially concedes this, admitting that he did not exhausted his Ground Five claim of cumulative error, and asks that his petition should be dismissed without prejudice [sic] to permit him to return to state court to do so. ECF No. 26 at 2.  However, Petitioner does not concede that he has failed to exhaust his claims of counsels' ineffectiveness, and instead argues that the claims were raised in circuit court

---

[9] Picard v. Connor, 404 U.S. 270 (1971).

but summarily dismissed; and then on appeal, the WVSCA not only failed to adjudicate or even address the five sub-claims of counsels' ineffectiveness, it failed to remand the case back to the circuit court for a hearing on their merits as he requested. Thus, he argues, the state courts' "missteps . . . appear[] to be intentional,  as the State courts of West Virginia have a long and storied history of willfully trapping unsuspecting criminal petitioners in legal purgatory, trapping them in a sort of "no-man's-land" somewhere between the State and Federal systems, effectively preventing them from properly pursuing" federal relief on their claims. Id. at 3 – 4.

After a thorough review of the record, the undersigned agrees with the Respondent that Petitioner has filed a mixed petition.  As an initial point, however, the undersigned first notes that inexplicably, despite his having done so at the state court and on appeal, nowhere in Grantham's instant petition  or in his response in opposition to Respondent's dispositive motion, does Grantham explicitly state *any* federal component or argue any federal constitutional violations with regards to his § 2254 claims. His petition includes no memorandum in support; the petition merely states generally that his "constitutional rights" have been violated, without identifying whether he is referring to his state or federal rights.  He cites to no law at all, let alone any federal law; he only reiterates facts. Ordinarily this alone would be grounds for summary dismissal of all of Grantham's claims, because a § 2254 petition must allege that the conviction or sentence violates the United States Constitution, a federal law, or a United States treaty. See 28 U.S.C. § 2254(a). Here, however, because among the attachments to his § 2254 petition, Grantham also included a list of the claims raised in his state habeas and in the appeal of the same [see ECF No. 1 at 20 – 21], claims which *do* include federal components, the undersigned will liberally construe those of Petitioner's instant claims that are exhausted, to also include those federal bases, where possible. Even in doing so, a careful analysis of Petitioner's claims reveals that only Petitioner's

Ground Two claim that he was denied an impartial jury by the inclusion of Juror No. 7450, Victor Holmes is exhausted. This claim, although not raised on direct appeal, was raised as Ground Two in his amended state habeas as a violation of his Sixth and Fourteenth Amendment rights; it was then raised on the appeal of the same, as Ground Three, albeit there only as a violation of his Fourteenth Amendment rights.

A careful examination of each of Petitioner's remaining claims follows:

**Ground One:** (ineffective assistance of trial and appellate counsel); this claim was not raised on direct appeal. While raised as Ground One in his amended state habeas with the same five sub-grounds he raises here; when raised to the WVSCA as Ground Two on appeal of the denial of his state habeas, it was raised as a different claim, i.e., as the circuit court's violation of Rule 4 of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, W.Va. Code § 53-4A-3, for summarily dismissing all of the grounds of counsels' ineffectiveness. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard, 134 F.3d at 619. A federal court may only consider those issues the petitioner presented to the state court. Picard v. Connor, 404 U.S. 270 (1971). Therefore, this claim with all its sub-parts is not exhausted, because Petitioner still has a remedy for it in state court.

**Ground Three:** (the trial court erred in denying his motion to sever his trial from his co-defendant's); this claim was raised on appeal as Ground One with a federal basis (relying on a United States Supreme Court case, two cases from the Fourth Circuit, and a case from the Second Circuit).[10] See ECF No. 21-3 at 34 – 35. None of those cases mentioned due process

---

[10] Zafiro v. United States, 506 U.S. 534 (1993); United States v. Hayden, 85 F3d 153 (4th Cir. 1996); United States v. Najjar, 300 F.3d 466 (4th Cir. 2002); and United States v. Marquez, 449 F2d 89 (2nd Cir. 1971). While Respondent speculates that Petitioner may possibly have posited a Fifth Amendment violation with regards to this

violations or the Fourteenth Amendment.  Petitioner then raised the claim in his amended state habeas as Ground Three, but there, for the first time, as a violation of his due process rights under the Fourteenth Amendment [ECF No. 21-10 at 17], a different basis than he raised on appeal.  To exhaust a claim in state court, the petitioner must "expressly raise that same federal constitutional claim in state court that he raises in federal court." Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31.  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made." Anderson v. Harless, 459 U.S. at 6. Further, he did not raise the claim in his appeal of the state habeas to the WVSCA.  Therefore, it is not exhausted because Petitioner still has a remedy for it in state court.

**Ground Four**: (the trial court erred when it gave an improper "concerted action" jury instruction); this claim was raised on direct appeal as Ground Seven, but with no federal basis. See ECF No. 21-3 at 42 – 43. The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims – *in federal terms* – to the highest state court prior to presenting them for federal habeas review.  Picard v. Connor, 404 U.S. at 275. The claim was then raised in

---

and his Ground Four and that *assuming* that he did so, *if* Petitioner were again relying on the same ground, then he may have fairly presented these two claims to the WVSCA, it may therefore be exhausted. See ECF No. 21, n.4 at 7. The undersigned does not agree. While there was some discussion of whether his co-defendant could have "pled the Fifth" in the introductory "Statement of the Case" in Petitioner's brief on appeal, nowhere in the argument on this or his Ground Four claim did Petitioner ever make mention of the Fifth Amendment.  Similarly, the Fourth Circuit has found that "the two references regarding appellate counsel in his first filing were never asserted as part of any of the . . . "grounds" for relief . . . specifically identified; instead, they were styled simply as responses to questions seeking background information about the earlier proceedings in his case." Mallory v. Smith, 27 F.3d 991, 995, 1994 U.S. App. LEXIS 16356, *11 (4th Cir. 1994).  Further, the Mallory court noted that for the courts "to wind their way through these arguably presented claims is an arduous enough task without the burden of scrutinizing habeas filings for claims--such as the instant one--that were never specified as grounds for relief." Id.  Nonetheless, here, because Petitioner's clearly-stated basis for these two claims in his amended petition was a violation of his due process rights under the *Fourteenth* Amendment, there is no basis in the record to impute or construe any violation of the Fifth Amendment in his argument, either there or here.

Petitioner's amended state habeas, for the first time as a violation of his due process right to fair trial under the Fourteenth Amendment.  However, Petitioner then failed to raise it on the appeal to the WVSCA.  Therefore, it is not exhausted, because Petitioner still has a remedy for it in state court.

**Ground Five**: (cumulative error); even Petitioner concedes that this claim was not raised on direct appeal; he admits, and the record confirms, that it was raised in his amended state habeas as Ground Five, a Fourteenth Amendment due process violation, but then it was not raised on the appeal of the same.  Therefore, it is not exhausted, because Petitioner still has a remedy for it in state court.

Although many of the claims raised in the instant petition are somewhat similar to claims raised below, as noted *supra*, under Anderson v. Harless, *supra* at 6, that is insufficient. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, *supra* at 619. Accordingly, it cannot be said that Petitioner has fully exhausted his state court remedies as to Grounds One, Three, Four, and Five.  See Moore, 879 F. Supp. at 593; McDaniel, 631 F. Supp. at 1546; see also Meadows v. Legursky, 904 F.2d 903, 908 - 09 (4th Cir. 1990) (abrogated on other grounds, Trest v. Cain, 522 U.S. 87 (1997)).

In Rose v. Lundy, 455 U.S. (1982), the Court held that a federal district court may not adjudicate mixed petitions and imposed a requirement of total exhaustion, implemented by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to litigate the unexhausted claims. At the time the Court issued this decision, AEDPA[11] had not been enacted, and there was no statute of limitations on federal habeas corpus petitions.

---

[11] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2255.

Therefore, dismissal without prejudice did not preclude petitioners from returning to federal court once their claims were exhausted in state court proceedings.

However, "[a]s the result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with "mixed" petitions, run the risk of forever losing their opportunity for any federal  review of their unexhausted claims. Rhines v. Weber, 544 U.S. 269 (2005). Accordingly, the Supreme Court has held that a federal district court may, under some circumstances stay, rather than dismiss without prejudice, a federal habeas petition containing both exhausted and unexhausted claims in order to allow the petitioner to present the unexhausted claims to the state court.

Having concluded that Petitioner has presented both exhausted and unexhausted claims, here, while neither party has so moved the Court, presumably because the one-year period of limitation was not an issue at the time their pleadings were filed, now, because of the length of time this matter has been pending, it is apparent that Petitioner would be time-barred if the petition were dismissed pursuant to Lundy. Therefore, the undersigned must turn to consideration of whether stay and abeyance is appropriate, and whether the same is appropriate in this case.

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2244(d). The limitation period shall run from the latest of:

> A) the date on which the judgment of conviction becomes final by the conclusion of direct review of the expiration of the time for seeking such review;

> B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

22

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a federal prisoner does not file a petition for writ of *certiorari* with the United States Supreme Court, the one year limitation begins to run when the time for filing a writ - 90 days - expires.

In the present case, Petitioner was convicted on June 18, 2012 and sentenced on August 27, 2012. The WVSCA entered its decision affirming his convictions and sentences on November 22, 2013; mandate on that decision issued on December 23, 2013. Petitioner did not seek a writ of *certiorari* from the United States Supreme Court, but he had until March 24, 2014 to do so. Thus, Grantham's judgment and convictions became final on March 24, 2014, when the time to seek *certiorari* expired. Pursuant to Federal Rule of Civil Procedure 6(a), the clock on the one-year period of limitation began to run the following day, on March 25, 2015. See also Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

Grantham filed a *pro se* state habeas corpus petition on June 16, 2014, tolling the clock on his one-year period of limitation after only 83 days had run. See 28 U.S.C. § 2244(d)(2) [providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."]; Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  Through counsel, Grantham filed an amended petition on November 5, 2014. The circuit court denied the habeas petition on April 13, 2016. Grantham timely appealed the denial of the same to the WVSCA; the WVSCA's decision affirming the circuit court decision on his habeas claims was issued on March 10, 2017. Mandate issued on that decision on

April 11, 2017, rendering it final.[12] Therefore, again adding one day pursuant to Fed.R.Civ.P. 6(a) the clock began to run again on Grantham's one-year period of limitation on April 12, 2017.

Grantham filed his federal habeas petition on May 25, 2017, after an additional 43 days of the one-year period of limitation had run, for a total of 126 days. The time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001). Accordingly, since the date Grantham filed the instant petition until the date of this Report and Recommendation, an additional 235 days of his one-year period of limitations have passed, for a total of 361 days.  By the time a ruling on this matter is final, when the District Judge rules on it, the one-year period of limitation will have expired, and any subsequent petition would be untimely.

As established by the United States Supreme Court, stay and abeyance is only appropriate in limited circumstances in which the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhine v. Weber, 544 U.S. 269, 277-78 (2005). In Rhines, the Supreme Court provided little guidance as to what constitutes good cause in the context of stay and abeyance. See Rhines, 544 U.S. at 279 (Stevens, J., concurring) ("[G]ood cause for failing to exhaust state remedies more promptly . . . is not intended to impose the sort of strict and inflexible requirement that would trap the unwary pro se prisoner.") (internal markings and citation omitted). In addition, the lower courts differ on how stringently to define good cause in the context of stay and abeyance. See Provencio v. Chrones, No. 06-1670, 2007 WL 1299967, at *2-*6 (S.D. Cal. Apr. 30, 2007) (collecting cases

---

[12] The United Supreme Court has held that an application for state post-conviction review is not "pending" after the state court's post-conviction review is complete. Therefore, § 2244(d)(2) does not toll the 1-year limitation period during the pendency of a petition for certiorari. See Lawrence v. Florida, 549 U.S. 327 (2007). By extension, this means that unlike with a direct appeal, the statute of limitations is not tolled during the time in which a petitioner could seek a petition for certiorari on an adverse ruling in a habeas appeal.

containing various definitions for good cause standard); Williams v. Hurley, No. 2:05-cv-985, 2006 WL 1650771, at 10 (S.D. Ohio June 6, 2006) (report and recommendation discussing various definitions applied and noting that some courts have adopted standard for cause applicable to procedural default while other courts have declined to do so); *compare* Landeck v. Allen, No. 3:14cv-88, 2014 WL 5410630, at *4 (E.D. Va. Oct. 22, 2014) (recognizing that standard should not be "inordinately demanding") *with* Wooten v. Kirkland, 540 F3d 1019, 1024 (9th Cir. 2008) (declining to adopt "broad interpretation" of good cause because such interpretation would undermine goals of ADEPA).

Consequently, federal courts have also disagreed as to what constitutes good cause in the stay analysis. *Compare* Long v. Ballard, No. 2:13cv26, 2013 WL 6858415, at 6 (N.D. W.Va. Dec. 30, 2013) (finding that good cause did not exist to grant stay where petitioner argued that any subsequent federal habeas petition would be time barred), *with* Smith v. Wolfe, No. PJM-10-2007, 2011 WL 4548315, at 6 (D. Md. Sept. 27, 2011) (granting stay rather than dismissing without prejudice where any subsequent federal habeas petition would be time barred), *and* Murray v. Perry, No. 3:06-cv-51, 2007 WL 601494, at 5 (N.D. W.Va. Feb. 22, 2007) (magistrate judge recommending stay where any subsequent federal habeas petition would be time barred) (subsequently dismissed as moot due to Murray's death), *and* Clement v. Blair, No. 06-00351, 2007 WL 57782, at 3 (D. Haw. Jan. 5, 2007) (recognizing that "impending expiration of [AEDPA's] statute of limitations does constitute good cause."); *compare* Newman v. Lempke, No. 13-cv-531, 2014 WL 4923584, at 3 (W.D.N.Y. Sept. 30, 2014) (recognizing ignorance or confusion about law may constitute good cause), and Provencio, 2017 WL 1299967, at 5 (report and recommendation finding that ignorance of law and reasonable confusions as to whether  state habeas petition would be timely satisfied good cause standard), and Riner v. Crawford, 415

F.Supp.2d 1207, 1211 (D. Nev. 2006) (holding that good cause exists where petitioner can "show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control"), *with* Jackson v. Baenen, No. 12-cv-00554, 2012 WL 5988414, at 2 (E.D. Wis. Nov. 29, 2012) (holding ignorance of law does not constitute good cause), *and* McIntyre v. Quarterman, No. 3-09-cv-0574, 2009 WL 1563516, at 3 (N.D. Tex. June 2, 2009) (same); compare Blake v. Baker, 745 F.3d 977 (9th Cir. 2014) (holding ineffective assistance of counsel during state habeas proceedings may constitute good cause for stay), *and* Rhines v. Weber, 408 F.Supp.2d 844, 849 (D.S.D. 2005) (same), *with* Edwards v. Thaler, No. 3:10-cv-0006-M, 2011 WL 4056299, at 2 (N.D. Tex. Aug. 15, 2011) (finding that ineffective assistance of state habeas counsel did not support finding of good cause for stay), report and recommendation adopted by 2011 WL 4074330 (N.D. Tex. Sept. 12, 2011), *and* Carter v. Friel, 415 F.Supp.2d 1314, 1317-18 (D. Utah 2006) (recognizing split of authority as to whether ineffective assistance of post-conviction counsel constitutes good cause and concluding that it does not).

Here, it seems apparent from the record that the Petitioner believed he had exhausted his claims in the state courts. Moreover, as an unsophisticated *pro se* litigant, to whom latitude should be given, his response in opposition still does not appear to appreciate the fact that the ineffective assistance of counsel claims he raised on appeal of his habeas to the WVSCA were no longer the "straight up" Sixth Amendment/ineffective assistance of counsel claims he raised in the circuit court, but rather, were now claims that the circuit court denied relief pursuant to Rule 4 of the West Virginia Rules Governing Post-Conviction Proceedings, W. Va. Code § 53-4A-3; which, while *similar*, were entirely different claims from the claims raised in circuit court. The

undersigned finds that any confusion on the Petitioner's part as to whether some of his claims had been properly exhausted is an appropriate factor to consider in determining whether he acted reasonably in filing for habeas relief prematurely with this Court. Consequently, in light of the near-certainty that the Petitioner's ability to obtain federal habeas relief will be denied if his petition is dismissed, the undersigned finds that good cause exists for his failure to exhaust his state court remedies before proceeding to this Court.

As for the second consideration in assessing the propriety of a stay, the Respondent has not argued, and the undersigned cannot conclude that the Petitioner's claims are plainly meritless. Having reviewed the § 2254 petition, many of the unexhausted claims relate to critical aspects of his conviction, including ineffective assistance of counsel.

Finally, with regard to the third element set forth in Rhines, there is no indication that the Petitioner has engaged in "intentionally dilatory litigation tactics." Rhines, 544 U.S. at 278. In fact, it appears quite the opposite. The Petitioner appears to have been diligent in seeking relief from his convictions. He timely filed an appeal, and subsequently, filed a *pro se* habeas petition before counsel was appointed to represent him. Furthermore, there is no indication that he failed to cooperate with counsel or prevented any of his habeas counsel from pursuing all claims which he believed were proper. Finally, within approximately 43 days of the WVSCA denying his habeas appeal, he sought federal habeas relief in this Court.

As previously established, the Petitioner filed this case on May 25, 2017. Because the time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001), here, because 126 days elapsed before this petition was filed, and it has been pending for almost eight months, by the time this Report and Recommendation is entered, the one-year federal time limit

will soon expire; moreover, a decision in this matter will not be final until the District Judge rules on it, thus, a dismissal would render a subsequent habeas petition untimely.

In light of the fact that, pursuant to <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), a federal district court may not adjudicate mixed petitions and the "AEDPA's 1-year statute of limitations and <u>Lundy</u>'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions, run the risk of forever losing their opportunity for any federal review of their unexhausted claims." <u>Rhines v. Weber</u>, 544 U.S. 269, 275 (2005).  Consequently, that is the position Petitioner is in.

## IV.   <u>Recommendation</u>

For the reasons previously set forth, and given the Petitioner's *pro se* status, the undersigned makes the following alternate recommendations:

1)  it is hereby recommended that the petition in this matter be construed as a "mixed petition;" that the Respondent's Motion for Judgment on the Pleadings [ECF No. 22] be **GRANTED**, and that the petition be **DISMISSED with prejudice,[13]** unless within the time period fixed for filing objections, Petitioner notifies the Court in writing that he wishes to amend his petition and delete those claims which are not exhausted and proceed only on his one exhausted claim.

2) In the event that the petition in this matter be construed as a "mixed petition" and the Petitioner chooses to sever his unexhausted claims and proceed only on the one exhausted claim, the undersigned hereby recommends that the Respondent's Motion for Judgment on the Pleadings [ECF No. 22] be **DENIED without prejudice**, and that the Respondent be directed provide a supplemental response, addressing Petitioner's remaining claim on its merits;

---

[13] Normally, such a dismissal would be without prejudice, but here, because Petitioner will be time-barred from returning to this Court after returning to state court to exhaust, he will be unable to refile his federal petition.

3) Alternatively, if Petitioner prefers not to sever his unexhausted claims, and instead, chooses the option of a stay and abeyance, permitting him to return to state court to finish exhausting the remainder of his claims, then the undersigned recommends that the Respondent's motion for judgment on the pleadings [ECF No 22] be **DENIED without prejudice.**  In the event that Petitioner chooses this option, the undersigned further recommends that Petitioner be directed to: (1) file his state court claims within 30 days of this matter being stayed; (2) file quarterly reports beginning April 1, 2018, explaining the status of his unexhausted claims; and (3) file a Notice of Exhaustion within 30 days from the date his state court remedies have been fully exhausted. The Petitioner should be forewarned that failure to comply with any of these requirements will result in dismissal of his § 2254 petition.

Finally, the undersigned recommends that Petitioner's pending August 17, 2017 motion for an order directing the state court to provide a hearing and fully adjudicate Petitioner's ineffective assistance of counsel claims [ECF No. 26], contained within his response in opposition to Respondent's dispositive motion,  be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court.   The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: January 16, 2018

/s/ *Michael J. Aloi*

MICHAEL J. ALOI
UNITED STATES MAGISTRATE JUDGE